UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSICCA SPURCK, individually and on behalf of all others similarly situated,

                       Plaintiff,

v.

DEMET'S CANDY COMPANY, LLC,

                       Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/27/2022

21 CV 05506 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Jessicca Spurck ("Plaintiff") brings this putative class action against Demet's Candy Company, LLC[1] ("Defendant"), alleging violation of New York's General Business Law §§ 349 and 350, breach of express warranty, breach of the implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, negligent misrepresentation, fraud, and unjust enrichment. (ECF No. 1.) Presently before the Court is Defendant's motion to dismiss the Complaint. (ECF No. 11.) For the following reasons, the motion is GRANTED.

## BACKGROUND

    The following facts are taken from Plaintiff's Complaint (ECF No. 1) and are accepted as true and construed in the light most favorable to Plaintiff for purposes of this motion.

    Defendant manufactures, labels, markets and sells pretzels purporting to be covered in white fudge under the Flipz Brand (the "Product"). (Compl. ¶ 1.)

---

[1] Demet's Candy Company, LLC is now known as Star Brands North America, Inc.

1



Fudge is a "type of sugar candy that is made by mixing sugar, butter and milk." (*Id.* ¶ 3.) Fudge can have almost any flavor, and milk fat is "the central component." (*Id.* ¶ 4.) The quality of fudge depends on the amount and type of fat-contributing ingredients. (*Id.* ¶ 19.) The fat ingredients are typically from dairy or vegetable oils. (*Id.* ¶¶ 22.) The dairy ingredients are based on milk fat, typically butter, and the vegetable oil ingredients include palm kernel and palm oil. (*Id.* ¶¶ 23; 25.)

Consumers of the Product expect it to contain ingredients essential to fudge when they observe the representation "White Fudge." (*Id.* ¶ 38.) However, the Product lacks the type and amount of dairy and milkfat ingredients essential to fudge, namely butter, and instead it contains vegetable oils. (*Id.* ¶ 39.)

INGREDIENTS: SUGAR, ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE [VITAMIN B1], RIBOFLAVIN [VITAMIN B2], FOLIC ACID), VEGETABLE OIL (PALM KERNEL OIL AND HYDROGENATED PALM OIL), MILK, SKIM MILK POWDER, SOY LECITHIN (EMULSIFIER), CORN SYRUP, SALT, ARTIFICIAL FLAVOR, YEAST, MALTED BARLEY FLOUR, LEAVENING (SODIUM BICARBONATE).

The fudge in the Product is comprised of sugar, vegetable oil (palm kernel oil and hydrogenated palm oil), milk, skim milk powder, soy lecithin (emulsifier), and artificial flavor.  (*Id*. ¶ 42.)  However, the fat content is not balanced between vegetable fats and dairy ingredients, as the Product contains more vegetable fat ingredients than dairy ingredients.  (*Id*. ¶¶ 43-44.)  Reasonable consumers are misled by the Product's representation as fudge because they expect the Product to have a non-*de-minimis* amount of milkfat instead of vegetable oil fats.  (*Id*. ¶ 52.)  The absence of milkfat means the Product "provides less satiety, has a waxy and oily mouthfeel and leaves an aftertaste."  (*Id*. ¶ 53.)  Further, consumption of vegetable oils is linked to numerous health problems.  (*Id*. ¶ 54.)

Plaintiff bought the Product on one or more occasions between November and December of 2020.  (*Id*. ¶ 75.)  Plaintiff did not expect the Product to replace the "essential fudge ingredients" with vegetable oils, and would not have purchased the Product if she knew the representations were false.  (*Id*. ¶¶ 80-81.)

Plaintiff filed suit on June 23, 2021. (ECF No. 1.)  Defendant filed a motion to dismiss on February 4, 2022.  (ECF No. 11.)  Plaintiff filed a memorandum in opposition (ECF No. 13), and Defendant filed a reply memorandum, and two notices of supplemental authority (ECF Nos. 14; 15 & 16.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff asserts claims against Defendant for (1) violations of §§ 349 and 350 of the New York General Business Law ("GBL"), (2) negligent misrepresentation, (3) breach of express warranty, (4) breach of implied warranty of merchantability, (5) violation of the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, (6) fraud, and (7) unjust enrichment. (Compl. ¶¶ 81-101.) The Court will examine each claim in turn.

**I.   New York General Business Law Sections 349 and 350**

Section 349 of the GBL involves unlawful deceptive acts and practices, while section 350 involves unlawful false advertising. "The standard for recovery under [Section] 350, while specific to false advertising, is otherwise identical to Section 349." *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (2010) (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)). The elements of a cause of action under both Sections 349 and 350 are that: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or

misleading conduct." *Id.* (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)).

The parties' main dispute in the instant motion involves the second element: whether Defendant engaged in deceptive or materially misleading acts or practices. To be actionable, the alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26; *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ("As for the 'materially misleading' prong, '[t]he New York Court of Appeals has adopted an objective definition of misleading, under which the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances.'"). In determining whether a reasonable consumer would be misled, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (citing *Wurtzburger v. Kentucky Fried Chicken*, No. 16-cv-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017)); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Oswego*, 85 N.Y.2d at 26).

A. *The Product's Label is Not Misleading*

Plaintiff claims that the representation that the pretzels are covered in white fudge is false, deceptive, and misleading because the Product lacks "the type and amounts of ingredients consumers expect in fudge." (Compl. ¶ 2.) Defendant avers that "no reasonable consumer would

5

expect from reading the Product's label that its fudge coating necessarily entails the use of any specific recipe or ingredient." (Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint ("Mem.") ECF No. 12 at 5.)  The Court agrees.

A similar case was recently decided by the Illinois Central District Court.  In *Reinitz v. Kellogg Sales Co.*, the plaintiff averred that the defendant's Frosted Chocolate Fudge Pop-Tarts lacked the ingredients essential to fudge, namely butter and milk, and instead included vegetable oils and whey.  No. 21-cv-1239-JES-JEH, 2022 U.S. Dist. LEXIS 98580, at *9 (C.D. Ill. June 2, 2022).  Plaintiff brought a claim under the Illinois Consumer Fraud Act, which states a representation is deceptive "if it creates a likelihood of deception or has the capacity to deceive." *Id*. at *6.  After a review of the plaintiff's arguments, which appear to be substantially similar to the arguments in the Complaint here[2], the court held that "Plaintiff fail[ed] to support that the average consumer would believe a fudge product must, of necessity, contain milkfat." *Id*. at *8–9.  Further, the court held that it could not find that "Plaintiff's pleadings establish[ed] a probability that a significant portion of the general consuming public . . . could be misled." *Id*. at *9 (internal quotation marks omitted).

Similarly, here, the Court holds that a reasonable consumer is not likely to be reasonably misled by the Product's packaging.  A reasonable consumer would not infer that the Product was made with a specific fudge recipe or ingredient without additional representations on the packaging.  *See Warren v. Stop & Shop Supermarket, LLC,* No. 20 Civ. 8718 (NSR), 2022 U.S. Dist. LEXIS 47067, at *14 (S.D.N.Y. Mar. 16, 2022) (holding that "a reasonable consumer would associate the 'honey' []label with the Product's flavor and not as a particular ingredient, much less the predominant one"); *Civello v. Conopco, Inc.*, 20 Civ. 1173 (VM), 2021 WL 5761894, at *3

---

[2] This case was also filed by Plaintiff's counsel, Spencer Sheehan of Sheehan and Associates PC.

(S.D.N.Y. Dec. 3, 2021) ("when the full context of a product's packaging suggests that representations regarding 'vanilla' refer not to the flavor, but to a specific ingredient, these vanilla cases are not so easily dismissed"); *Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2021 WL 1580827, at *2 (N.D. Cal. Apr. 22, 2021) (dismissing challenge to "Vanilla Soymilk" label because it lacked "any other words or pictures that suggest the vanilla flavor is derived *exclusively* from the vanilla bean") (emphasis in original).  While the Complaint lists several recipes and sources that list the ingredients for fudge that include sugar, milk, and butter, none of these sources claim that this is the *only* recipe for fudge.  In fact, the *Reinitz* court discussed how Molly Mills, who is identified by Plaintiff as a leading authority on fudge (Compl. ¶ 9), "has formulated a variety of fudge recipes in which milkfat is not an ingredient." 2022 U.S. Dist. LEXIS 98580, at *8.

Accordingly, the Court concludes that Plaintiff has failed to sufficiently allege that the Product's label is misleading for purposes of her claims under GBL §§ 349 and 350.

**II.      Negligent Misrepresentation**

Under New York law, a claim for negligent misrepresentation requires the plaintiff to plausibly allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Marc J. Bern & Partners LLP v. U.S. Legal Support, Inc.*, No. 17 Civ. 6771 (ER), 2018 WL 2943784, at *6 (S.D.N.Y. June 11, 2018) (citing *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)).  "A special relationship may be established by 'persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that   reliance   on   the   negligent

misrepresentation is justified.'" *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)).

"[G]enerally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties." *Marc J. Bern*, 2018 WL 2943784, at *6 (quoting *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 296–97 (2011)).  Instead, "[i]n the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of . . . a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech.'" *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (quoting *Kimmell*, 89 N.Y.2d at 264) (alterations in original).  *Kimmell* directs courts to examine the following factors to determine whether a special relationship, and a duty to provide correct information, exists: (1) "whether the person making the representation held or appeared to hold unique or special expertise"; (2) "whether a special relationship of trust or confidence existed between the parties"; and (3) "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.* (quoting *Kimmell*, 89 N.Y.2d at 264).

Here, Defendant argues that Plaintiff does not plausibly allege the existence of a special relationship.  (Mem. at 11-12.)  Plaintiff responds that Defendant "h[eld] itself out as having special knowledge and experience [in] this area." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint ("Opp.") ECF No. 13 at 15.)  Applying the *Kimmell* factors, the relationship between Defendant, as the manufacturer and seller, and Plaintiff as the buyer, does not rise to the level of the kind of special relationship—approaching that of privity—that would impose a duty to speak on Defendant.  "[N]ot all representations made by a

8

seller of goods . . . will give rise to a duty to speak with care." *Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (quoting *Kimmell*, 89 N.Y.2d at 263). "Instead, the law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Id.* (citing *Kimmell*, 89 N.Y.2d at 263).

The Complaint's allegations here only describe a relationship between Plaintiff and Defendant which is that of an ordinary buyer and seller—which does not give rise to the kind of special relationship necessary to maintain a claim for negligent misrepresentation. *See, e.g.*, *Izquierdo*, 2016 WL 6459832, at *9 (dismissing negligent misrepresentation claim based on allegedly misleading candy packaging because "[n]othing in the complaint suggests that the transaction differs in any way from the numerous cases in this District and Circuit in which courts have held that a basic commercial transaction does not give rise to a special relationship."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015) (dismissing negligent misrepresentation claim alleging defendant's products were misleadingly labeled as "organic," "natural," or "all natural" for "failure to plead any cognizable special relationship" with the defendant, reasoning that "[d]efendant's obligation to label products truthfully does not arise from any special relationship. There is nothing approximating privity between the parties.").

Accordingly, Plaintiff's negligent misrepresentation claim fails.

### III. Breach of Express Warranty

To state a claim for an express breach of warranty under New York law, plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty,

9

and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). However, "[i]n order to assert a breach of express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'"[3] *Lugones*, 440 F. Supp. 3d at 244 (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)); *see also* N.Y. U.C.C. § 2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy").

Here, Defendant avers that Plaintiff has failed to give timely pre-suit notice of the alleged breach as required by New York law. (Mem. at 12-13.) The Court agrees and concludes that Plaintiff's express warranty claim fails for lack of timely notice. Plaintiff alleges only that she "provided or will provide notice to defendant, its agents, representatives, retailers and their employees." (Compl. ¶ 102.) "That allegation is insufficient to show that the buyer provided timely notice of the alleged breach—the statement is wholly equivocal." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 391 (S.D.N.Y. 2021). It does not allege that notice has been provided, only that Plaintiff "provided or will provide" notice.[4] "If Plaintiff had provided notice, she could have written that, rather than pleading, in essence, both that she did provide notice, and that she did not do so but will do so in the future. Plaintiff has not adequately pleaded that she in fact provided notice." *Id.*

---

[3] "Although a minority of New York State cases suggest an exception to the notice requirement in retail sales, the court declines to impose this exception in the instant action, particularly given that the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018); *see also Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 245 (S.D.N.Y. 2020) (following *Colella* and finding the exception "inapplicable where, as here, Plaintiffs have not alleged any physical or personal injury as a result of Defendant's alleged breach"). Here, too, Plaintiff has not alleged any physical or personal injury, so the exception is inapplicable.

[4] Plaintiff also alleges that "Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices." (Compl. ¶ 103.) This allegation does not suggest that the buyer provided timely notice, as required.

Accordingly, the Court dismisses Plaintiff's claim for breach of express warranty. *See Lugones*, 440 F. Supp. 3d at 245 (finding that "Plaintiffs must allege some form of timely, pre-litigation notice" and dismissing breach of express warranty claim for failure to provide timely notice); *Colella*, 348 F. Supp. 3d at 143–44 (dismissing express warranty claim where the complaining "ma[de] no allegations and state[d] no facts showing that notice was provided to defendant"); *Quinn*, 958 F. Supp. 2d at 544 (dismissing breach of warranty claim for failure to allege timely notice).

### IV.     Breach of Implied Warranty of Merchantability

On the same basis on which the Court dismissed Plaintiff's claim for breach of express warranty, the Court similarly dismisses her claim for breach of the implied warranty of merchantability. "The U.C.C.'s notice requirement also applies to claims for breach of implied warranty." *Campbell*, 516 F. Supp. 3d at 392; *see also Int'l Bhd. of Teamsters Local 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, No. 10-cv-1692 (RJD), 2012 WL 13202126, at *23 (E.D.N.Y. Apr. 19, 2012) (dismissing express and implied warranty claims for failure to plead that defendants were given timely notification of breach); *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) (dismissing express and implied warranty claims under Section 2-607(3) of the U.C.C. because the complaint "lacks any allegation that plaintiff notified [the defendant]").

### V.      Magnuson Moss Warranty Act

"To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015). Hence, as her state law claims for express and implied warranty fail, Plaintiff's MMWA claim similarly fails for the same reasons.

**VI.     Fraud**

To state a claim of fraud under New York law, Plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). A claim of fraud must be alleged with the particularity required by Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402–03 (2d Cir. 2015). Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States ex rel. Tessler v. City of N.Y.*, 712 F. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

As discussed above, the Court concludes that Plaintiff has failed to allege a material misrepresentation of fact or omission because a reasonable consumer would not conclude that the Product's label communicates that the Product's "White Fudge" derives from milkfat. Furthermore, Plaintiff fails to plead facts that show Defendant acted with fraudulent intent. The Complaint merely contains conclusory statements that Defendant's intent "is evinced by its knowledge that the Product was not consistent with its representations." (Compl. ¶ 112.) This is insufficient. *See Barreto*, 518 F. Supp. 3d at 808 (dismissing fraud claim for the same reasons); *Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *7 (S.D.N.Y. Jan. 28, 2022) (same). Therefore, Plaintiff's fraud claim fails.

## VII.  Unjust Enrichment

Under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000) (internal quotation marks omitted). Plaintiff has failed to allege that any gains to Defendant would be unjust because she has not plausibly alleged that a reasonable consumer would be misled or deceived by the Product's label. *See, e.g.*, *McVetty v. TomTom N. Am., Inc.*, No. 19 CV 4908 (NSR), 2021 WL 965239, at *8 (S.D.N.Y. Mar. 13, 2021) (holding "McVetty [] failed to allege that any gains would be unjust where McVetty [did] not plausibly allege[] that a reasonable customer would be misled or deceived by TomTom's use of the term 'lifetime'"). Thus, Plaintiff's unjust enrichment claim fails.

## VIII.  Injunctive Relief

Finally, Plaintiff seeks injunctive relief for Defendant "to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws." (Compl. ¶ 3.) Because the underlying claims on which her requested injunctive relief depends fail, the Court denies Plaintiff's request for injunctive relief.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 11 and this action, to enter judgment accordingly, and to close the case.

Dated: July 27, 2022　　　　　　　　　　　　　　　SO ORDERED:
White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge